We'll turn to counsel in Serrano v. New York State Department. Mr. Sussman, you have that lean and hungry look that the invocation of hundreds of millions of dollars brings to your ... Well, all I can say is these cases are about as different as they could be, but that's your job, so I understand it and respect it. Thank you for the time. Michael Sussman, I'm appearing for Ms. Serrano, who's the appellant in this case. There are basically two issues I'd like to discuss with the Court. The first relates to the termination of Ms. Serrano in January 2013, and the second is the hostile work environment claim. With regard to the termination claim, Your Honors, the district court judge found that the termination was justified based on certain reasons adduced by the employer, namely time and attendance, and explicitly that the individual, Ms. Serrano, had filed too many complaints or charges of discrimination. With regard to the retaliation claim, which Ms. Serrano had raised, both under state and federal law, it's our view that the employer, in essence, conceded that it was retaliating against her for the exercise of her rights. They argued, amongst other things, that she, more than anyone else, had filed complaints, hundreds of pages of complaints. They have an affidavit from the affirmative action officer, who in 2008 had found that the agency had engaged in the creation of a hostile work environment toward her, saying that thereafter she continued to complain. Do you disagree if a person filed a complaint against a coworker every day, against different coworkers in a place, that at some point that could become such obnoxious behavior that it would demonstrate that a dismissal was not pretextual? What I disagree with is that there's a standard. It's a good faith standard. If an individual files complaints in good faith, and the district court made no other finding here with regard to those complaints, she did not find that they were baseless complaints. As I understand it, she didn't find they were made in bad faith. So yes, I think that there is an issue. First of all, Ms. Serrano was faced, over a lengthy period, and this sort of morphs into the second argument, hostile work environment argument, with an extremely hostile work environment, which had been pointed out to the agency long since and had not been dealt with by the agency. That environment was so multiplicitous in its manifestations, frankly, that to say it simply, if she had complained every day, it wouldn't be probably an exaggeration. If you're in a work environment, Your Honor, where your car is being vandalized, there are things being placed in your workstation repeatedly that are denigrating, you're not getting overtime that others are getting, you're being treated disparately, yes, it might be possible that you'd complain every day. Particularly, Your Honor, and I think it's important to note this, when your supervisor tells you, chronicle it and document it, which is what she was doing. And she presented to the district court, from my experience in these cases, an extraordinary amount of detail with regard to those matters, including direct evidence of national origin discrimination, several employee peers calling her a spick over a lengthy period of time, one in 2007-8, another in 2012. Now, on a summary judgment... I'm sorry, that's twice in four years. It was, well, so it was six years. Sorry. But it was two individuals, one doing it twice and the other doing it twice, so it was four occasions that the record demonstrates. Over how many years? The first, as I said, was 07-08, two occasions, and the second in 2012, so essentially a four or five year period. The first one was in 07. But regardless of frequency, when that behavior is combined with, you go to the affirmative action officer of your agency, and you make a complaint, and the gentleman finds that you were subjected to severe and pervasive discrimination, which was a bodyist finding in the summer of 2008, and then the agency director in that area, Raybrook, convenes a meeting and says at the meeting, in essence, by bringing complaints, you're going outside of our chain of command, stop doing it, and says you're imperiling other workers by complaining, and does that in the presence of the other individuals. It shows not merely an individual doing it. It's condemnation by the highest levels in that particular unit. So I think there's a huge amount here, and that gets to the issue of the continuing violation in the hostile work environment. Before we go there, and we certainly want to hear you on that, let's just focus for a moment on the Title VII claim. You don't dispute that you failed to bring this claim within 90 days of receiving a right to sue notice, following the March 2010 discrimination charge. No, that's correct. There was a later charge. That's accurate. All right. So certainly with respect... That's not the termination claim. The termination claim is timely brought. There's no argument that the termination... Just so we're clear, timely brought. I was going to address the timing issues in the context of the hostile work environment claim, because that's where they rise. There are two different timing issues, Judge Cabranes. Let me just briefly try to put them together. The first is, where you have an individual who has previously filed charges, and in one case, as you're indicating, got a right to sue letter, and he or she does not proceed at that point and bring a case in federal court, which Ms. Serrano had not done after those receipts, does... How does that interplay or interjoin with the continuing violation theory? The district court says that because you did not bring your cases, you didn't follow through at that point in time and go to federal court, you cannot invoke those same acts as part of your continuing violation theory. That's the issue that I'm asking this Court to address. And what I've written in the brief is, I don't see a case in this circuit that squarely addresses that issue. Now, there's a second issue with regard to timing, and that's this. Under Butts, as the Court is aware, and it's certainly well settled in this circuit, when you file an EEOC charge, you can raise certain specifics, but if the investigation of that charge would reasonably be understood to raise other matters, you're not delimited by the specifics you put in your EEOC charge. Broader consideration can be given to points which would reasonably have come out. The district court, again, limited my client with respect to the May 2012 charge the specific matters that were raised. I think both of those are errors, as well as with regard to the hostile work environment claim, and those both play into only the hostile work environment claim, not the termination claim. The third error with regard to that matter is the rather stingy construction of what it means to say, based on national origin. As I started pointing out earlier, in this case, as against many others, there is direct evidence with respect to national origin discrimination. However, in assessing the totality of circumstances, which this Court has repeatedly indicated district courts are to assess in determining whether a hostile work environment existed, what the district court, in my view, did was simply to say a whole lot of actions were not taking into account at all, based on those two limitation period issues I just discussed, and others were not taking into account because they don't have a racial or national origin signature, as the parlance now is. And I believe that's erroneous in this instance. I think that what ought to have happened is a much more thoroughgoing understanding of many of the issues she was subjected to, because while they may not have — nobody said directly it's because you're a Hispanic. Yes, that's true. But given the totality of circumstances, a reasonable jury could believe that the same supervisors who had deprecated her — denigrated her claims of national origin discrimination were acting in a similar consciousness in treating her as they were. So those are the errors that I assign on the hostile work environment claim. Now, in terms of retaliation — Yes, Your Honor. Given Ms. Serrano's actions around the time of her termination, you would agree that there was at least some justification — some justification — for her termination, aside from retaliation? I would not. The major citation they have with regard to that is something that occurred about a month after she was terminated, not predicating her termination. And that was a post that they speak about in their brief. That was not informing the termination. Ms. Serrano — my view of it is very simple. Time and attendance issues were raised. On time and attendance issues, Ms. Serrano had, as my brief point — reply brief points out, ample time on the books. She had not been a time and attendance abuser. There was no discipline about that previously. And to invoke it, a jury could find — and again, Reeves is very important here. And I know that Reeves is not a case that often is, frankly, respected. Judge Kovanec, don't make me laugh. The problem is this — Respected greatly. Reeves says, in its most critical point, that a jury — a reasonable jury — could refuse to believe the assertions of a defendant. And therefore, a district court has to take with — I'm calling it a grain of salt — these various defenses. Here, what's important is, they defend based on time and attendance. A reasonable jury, looking at her time and attendance, could say, there's really no issue. That's a pretext. With regard to her disruptiveness, if you read carefully through the affidavits that were submitted, many were submitted by people who were not then working with her, had been the targets of her legitimate complaints, and now they're saying she's disruptive in the work environment. A jury could say, yeah, you don't want her there. We understand that. You didn't want her there from the beginning. You complained when she spoke Spanish at work. You called her names. So it's not — to me, it doesn't get you anywhere. All right. I'm way above — Now, Mr. Sussman, just a final question. You had discovery here, or you may not have been counsel. I was not counsel. Yeah. There was discovery. There was discovery. And this is a summary judgment determination. Yes. I just want to make sure we all have — On all issues, it's summary judgment. There was a motion to dismiss, and as I explained in my brief, the standard the district court used in not granting parts of that motion to dismiss is, in my opinion, an accurate recitation of the law on these two issues. Okay. She did not apply that on summary judgment.  Mr. Spadolo. Good morning, Your Honor. Good morning, Your Honors. Joseph Spadolo for the State Defendants. You see a lot of Mr. Sussman, right? I personally don't see a lot of him, but I think our office has encountered him a few times. Yeah. You should familiarize yourself with Mr. Sussman. I'm glad you have this opportunity. Likewise. My pleasure. With respect to the retaliation claim, the plaintiff has a burden of showing but-for causation. And I urge the court to look at the complaints that this plaintiff filed over the course of her seven years of employment. Defendants put together a chronology of all these complaints. It's at page 1777 of the record. The plaintiff has never disputed its accuracy. And it shows that plaintiff attempted to bully and intimidate her superiors and her co-workers with a constant barrage of completely trivial complaints. And it's incorrect that the district court found these complaints were in good faith. The district court found that some complaints were in good faith, but not the hundreds of pages of complaints that she filed over the course of her seven years of employment. We need to look at an objective standard as well as subjective, whether they were filed in good faith as well as whether they were reasonable. Isn't that correct? That's correct, Your Honor. It has to be both subjective and objective. And in fact, even if the court finds that they were in good faith, this court in the good faith complaints of discrimination, if those complaints disrupt the workplace or create an environment that undermines the chain of command, which is particularly important in this setting because we're talking about a dispatch unit that is part of a division of law enforcement, then the employer can take adverse action to correct that. And it's simply not plausible to conclude that DEC terminated the plaintiff out of retaliatory animus because DEC tolerated the plaintiff's complaints for seven years, including five administrative charges with state and federal agencies, a state court action that included a motion for emergency motion for injunction, complaints with the governor's office, the inspector general, a state assembly person. If DEC had a modicum of retaliatory animus, it would have terminated her long ago. I'm sorry to interrupt you, but you invoked appendix 1717? 1777. 1777. Right. And that's a 40-page summary of chronology of all the complaints that the plaintiff filed during her employment. Now, they ultimately terminated the plaintiff because several weeks before her termination, nearly half the dispatch unit went to management and said, we can no longer work with this person. Her bullying, intimidating conduct, her incessant complaints impede us in performing our job of providing emergency services to the public. There were 12 dispatchers in the dispatch unit, including the plaintiff. Ten submitted affidavits in this litigation describing the tension and hostility that the plaintiff created, undermining their ability to do their job. Let me ask, so based on Mr. Badia's 2008 report, it seems that Ms. Serrano got off on the wrong foot about her and about Spanish in the workplace and so on. There was a complaint and that kind of escalated. And, you know, I wonder why that we shouldn't look at that as kind of infecting the whole of her tenure there. It seems that management made no effective response over the course of her tenure. Why doesn't that establish the racial and national origin discrimination that she's complaining of? Well, first, Your Honor, I would say that Mr. Abadia testified that the only evidence of race-based discrimination he identified was a single comment by Ms. Reynolds complaining about plaintiff's use of Spanish at work. Nothing else with respect to any of the other dispatchers. So why did he find that the workplace was full of hostility? It was full of hostility, but there's no evidence that it's full of hostility in her perception, but no evidence that it related to her race or national origin. In fact, most of the things she complains about, training, overtime, seniority, there is zero evidence to support her allegations. And if you look at the citations that Mr. Sussman includes in his reply brief, they're mostly to the conclusory interrogatory responses that the plaintiff included below, that defendants rebutted point by point in the litigation below. So when you look at the actual evidence, there is zero evidence that the plaintiff was treated disparately based on her race and national origin. And returning to Judge Carney's question, the management continued to investigate her complaints during this seven-year period, even after Abadia's report. And they repeatedly concluded that they were without foundation. I mean, she was complaining if someone threw away rotten food in the refrigerator or if someone put off Halloween decorations. She claimed that they were targeting her because there was a skeleton with a noose around Halloween time. She perceived that as directed at her in some way. With respect to the vandalism charge, management actually investigated that and found no evidence that other dispatchers were involved in that vandalism of her, a scratch on her car outside of the workplace. So... Did the department ever discipline anyone for any kind of mistreatment of her or in response to any of her complaints? In response to Mr. Abadia's affirmative action report in 2008, several dispatchers received counseling memoranda and were admonished by one of the top law enforcement officials at DEC. Admonished to do what or not do what? In particular, that it was appropriate for the plaintiff to speak Spanish at work, that that was part of her job. Part of her job, yeah. And that was the only race-based allegation that was uncovered by this investigation. The investigation also uncovered cliques, but there were other dispatchers who were outside of those cliques that were not Hispanic. So that had nothing to do with race or national origin. And... CLI-Q-U-E-S? Cliques? Cliques, yes. Groups. Yeah. All right. Personality conflicts. And this Court has said on multiple occasions that the Court is not a super-H.R. department tasked with resolving interpersonal disputes in the workplace. And moreover, transitioning to the timing issue here, all of these things that we're discussing are time-barred. The plaintiff concedes that her hostile work environment claim fails if the Court does not consider her stale allegations from her March 2010 administrative charge. Now that charge was nearly identical to the charge underlying this action. The May 2012 charge underlying this action contained 162 pages. All but three of those pages were photocopies of the prior charge that she failed to sue within 90 days of receiving a right to sue notice. And she is asking the Court to use the continuing violation doctrine to allow her to circumvent this 90-day rule. She has not cited a single case supporting that theory. There are at least four circuits that have squarely held that the continuing violation doctrine does not apply to this 90-day requirement. And moreover, she hasn't even meaningfully alleged a continuing violation. Since the additional allegations in her May 2012 charge, she doesn't even rely upon in her brief. So when you take away the conclusory tack-on allegations that were included in her May 2012 charge, you're left with two charges that are identical. And this Court said in its SoSoLiang decision, which was not a summary order contrary to Plaintiff's counsel's assertion, you can't circumvent the 90-day rule by filing a subsequent charge based on the same facts. And that's precisely what the Plaintiff did here. And with just... You indicate that the Second Circuit has not had the opportunity to address this notion of the continuing violation doctrine with respect to the 90-day requirement? That's correct, Your Honor. I don't think it's even necessary for the Court to reach that issue because... I understand, but I'm just kind of surprised that we haven't done it. We have a very active practice here in these matters, and I'm surprised that Mr. Sussman hasn't brought this to our attention earlier. And I think this case is one where the two charges are effectively the same. So how can you even allege a continuing violation? So there's that initial basis for even having to reach the issue. But Mr. Sussman makes no effort to distinguish the rationale in those four other circuit opinions, which I think is very sound. And finally, I'd like to reiterate that the employer has the prerogative to maintain a workplace that is free of commotion and subject to a chain of command, even when an employee makes good faith complaints of discrimination. And there is no evidence that her discrimination complaints were in good faith. And ultimately, the DEC had no choice but to terminate her because her disruptive conduct was imperiling the continued operation of the dispatch unit. I think what you heard is something very heavy, her disruptive conduct. And I think that someone asserting that would rely upon affidavits which relate to specific workplace incidents where an individual, here Ms. Serrano, did things at the workplace. And that happens. I've certainly seen it. That's not what's happening here. And if you read carefully these affidavits, there is Ms. Serrano taking the position, and I'll go through some of the events, that various events were targeted and directed at her over a long period of time by hostile individuals who did directly express at least three individuals she worked with. Nightingale, the gentleman who last spoke to her in a meeting in 2012, the male, as well as the individual who Reynolds directly spoke to her repeatedly, repeatedly about not speaking Spanish in the workplace, though that was part of her job, and Reynolds knew that and still said it, and said it after, according to the testimony and deposition, she was allegedly admonished. I don't know about the admonition. I don't know where it is in the record. But the point is, it continued. Management's response, just to be clear, and you raised this, Judge Kieran, I think it's very important, because management's response on this record, and again, we're in a summary judgment motion. Counsel would like you to take the evidence most favorably to him. That's wrong. You can't do it. Here's what happened. Management convened a meeting in August of 2008 in terms of setting the table and setting the agenda. And at that meeting, what was said to my client was, why are you going outside of here? Don't go outside of here again. And you're imperiling the promotion of another employee by going outside. You're imperiling another employee. But all of that is ancient history at this point. It's not, see, it's not ancient history under the continuing violation theory if there is a continuity between it and what followed. And what counsel said is fundamentally erroneous. In 2010, there were a series of events that had happened. My client did complain about them and did not follow through. There's no argument about that. But in the next complaint, as he says, there are three pages of additional incidents. He says she only added three pages. Under the continuing violation theory, if it continues, if you have one act that continues the same practice, you have a validity in terms of statute of limitations. So the only way you break that is by claiming she had to file suit earlier or she lost the continuing violation theory. And there's no case that says that in this circuit. To go back to Judge Cabranes' point, there isn't a case which says it. And it isn't sound logic. Counsel says, well, the other circuits, it's sound logic. It's not sound logic. Here's why. If you have a person who's never filed a complaint and has been subjected to a series of acts, and you have another person subjected to the very same series of acts who has filed a complaint but hasn't pursued it to Federal court, and you have no Federal court findings in either case, you have no State court findings in either case, which you don't have here either, then why should those people be treated differently from a continuing violation theory? There's no reason. There really isn't a logical reason. Under Vega, under Burlington, they should be treated exactly the same way, and therefore, the district judge — Eric, thank you. No, no, no, no, no. I'm going to shut up. I was telling you. I was signaling. But it's all right. Finish the sentence for sure. No, I just — I think that under those cases, and in order to extirpate discrimination, it's important to recognize continuing violation in this context. There are reasons people don't file suits when they might have. Thank you. Thanks very much. Always nice to see you, Mr. Sussman, and we're happy to see Mr. Spandau also, well-argued on both sides. We'll reserve decision. You'll hear from us in the fullness of time. Thank you. Yeah.